UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT PANN,

        Plaintiff,                      Hon. Janet T. Neff

v.                                              Case No. 1:14-cv-1074

CORIZON HEALTH SERVICES, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

        This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>, (Dkt. #32), and <u>Defendants' Motion for Summary Judgment</u>, (Dkt. #39). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion, (Dkt. #32), be **granted in part and denied in part**, and Defendants' motion, (Dkt. #39), be **granted**.

## BACKGROUND

        The following allegations are contained in Plaintiff's amended complaint. (Dkt. #13). Plaintiff's amended complaint is divided into eight separate counts each of which concern various unrelated issues. Accordingly, the Court will describe Plaintiff's allegations on a count-by-count basis.

      A.    Count I

On May 20, 2012, Plaintiff suffered a fracture of his right hand. (Dkt. #13 at ¶ 17). On June 4, 2012, Plaintiff underwent surgery to repair this injury. (Dkt. #13 at ¶ 18). Following surgery, Plaintiff was prescribed Ultram.[1] (Dkt. #13 at ¶ 24). On June 19, 2012, Plaintiff's Ultram prescription "ran out" at which point Plaintiff requested a refill. (Dkt. #13 at ¶¶ 25-26). In response, Nurse Kimberly Silvernail informed Plaintiff that Dr. Holms instructed that Plaintiff "was to take over the counter medication." (Dkt. #13 at ¶ 27). The following day, Plaintiff again requested a refill of his Ultram prescription. (Dkt. #13 at ¶¶ 28-31). Nurse Silvernail responded by stating to Plaintiff, "you're trying to work the system and you will never get Ultrams again." (Dkt. #13 at ¶ 30). Despite refusing Plaintiff's request for pain medication, Silvernail charged Plaintiff the five dollar health care co-pay fee. (Dkt. #13 at ¶ 30). On June 21, 2012, Plaintiff met with Dr. Holms who provided Plaintiff with a two week supply of Ultram. (Dkt. #13 at ¶ 31).

Plaintiff alleges that Nurse Silvernail denied him medication in violation of his Eighth Amendment right to be free from cruel and unusual punishment. (Dkt. #13 at ¶ 34). Plaintiff also alleges that Silvernail improperly charged him the five dollar co-pay following his June 20, 2012 examination. (Dkt. #13 at ¶¶ 35, 37). Plaintiff further alleges that Health Unit Manager (HUM) McKenna "is vicariously liable under respondeat superior theory by her workers' actions, she is responsible for ensuring patients receive prescribed treatment, which Plaintiff was obviously denied by pharmacy and RN Silvernail." (Dkt. #13 at ¶ 38).

---

[1] Ultram is a "narcotic-like pain reliever" used to treat moderate to severe pain. *See* Ultram, available at http://www.drugs.com/ultram.html (last visited on August 11, 2015).

B.     Count II

In October 2012, Dr. Holms prescribed Baclofen[2] for Plaintiff. (Dkt. #13 at ¶ 39). Dr. Stieve, a Corizon Health Care Medical Officer, denied this prescription. (Dkt. #13 at ¶ 38). Plaintiff alleges that Dr. Stieve denied him medication in violation of his Eighth Amendment right to be free from cruel and unusual punishment. (Dkt. #13 at ¶¶ 43-45).

C.     Count III

Plaintiff injured his back in 1980, suffering two herniated discs. (Dkt. #13 at ¶ 47). Plaintiff "has signed several medical releases for [prison] health care to confirm this pre-existing injury, diagnosed by myelogram." (Dkt. #13 at ¶ 47). When taking Ultram, Plaintiff "was able to function almost pain free for the first time in years," but "has not slept a full night since his Ultram prescription expired." (Dkt. #13 at ¶ 50). Dr. Holms informed Plaintiff that "if he were able to prove his spinal injury, Ultram medication would be available for use as needed." (Dkt. #13 at ¶ 51). Plaintiff's attempts to obtain his medical records from Harper Grace Hospital in Detroit, where the aforementioned myelogram was performed, have been unsuccessful. (Dkt. #13 at ¶ 52). Dr. Worel and Physician's Assistant Bien have refused Plaintiff's request to perform the testing necessary "to confirm Plaintiff's herniated disc." (Dkt. #13 at ¶ 54). Plaintiff alleges that the refusal by Worell and Bien to perform the requested testing constitutes deliberate indifference to his serious medical needs in violation of the Eighth Amendment. (Dkt. #13 at ¶¶ 54-55).

---

[2] Baclofen is used to relieve muscle "spasms, cramping, and tightness." *See* Baclofen, available at http://www.mayoclinic.org/drugs-supplements/baclofen-oral-route/description/drg-20067995 (last visited on August 11, 2015).

D. Count IV

Plaintiff is allergic to wool. (Dkt. #13 at ¶ 56). Dr. Worel denied Plaintiff's request for a cotton blanket accommodation, stating "there is no such thing as a wool allergy." (Dkt. #13 at ¶¶ 59-60). Plaintiff then asked Physician's Assistant Bien for a cotton blanket accommodation. (Dkt. #13 at ¶ 60). Bien denied the request, stating that he "would have to see the rash." (Dkt. #13 at ¶ 60). Plaintiff asserts that his medical records document that he has experienced "severe rashes and itching due to contact with wool." (Dkt. #13 at ¶ 60). Plaintiff alleges that by denying his requests for a cotton blanket accommodation, Dr. Worel and Physician's Assistant Bien have violated his Eighth Amendment right to be free from cruel and unusual punishment. (Dkt. #13 at ¶ 100).

E. Count V

Plaintiff was issued the following special accommodations due to his various physical ailments: (1) ground floor housing, and (2) bottom bunk. (Dkt. #13 at ¶ 61). At an unspecified date, these two accommodations were rescinded. (Dkt. #13 at ¶ 62). Plaintiff asked Dr. Worel and Physician's Assistant Bien to renew these particular accommodations, but both refused. (Dkt. #13 at ¶¶ 63-64, 68). Plaintiff alleges that their actions violated his Eighth Amendment right to be free from cruel and unusual punishment. (Dkt. #13 at ¶ 101).

F. Count VI

Plaintiff suffers from a "deformed right foot" and has, since 2002, received name brand athletic shoes with arch support. (Dkt. #13 at ¶¶ 69-70). Starting in 2013, the MDOC began issuing generic athletic shoes without arch support. (Dkt. #13 at ¶ 72). When Plaintiff asked Physician's

Assistant Bien for special footwear, she denied his request stating "you can purchase your own shoes." (Dkt. #13 at ¶ 73). As a result, Plaintiff's ability to exercise has "decreased dramatically" causing his weight, cholesterol, and blood pressure all to increase. (Dkt. #13 at ¶¶ 74-77). Plaintiff alleges that Bien's actions violated his Eighth Amendment right to be free from cruel and unusual punishment. (Dkt. #13 at ¶ 78).

### G.   Count VII

Plaintiff injured his left elbow in 1996. (Dkt. #13 at ¶ 80). Because this injury has "never healed properly," Plaintiff continues to experience pain and limitation of movement. (Dkt. #13 at ¶ 81). Dr. Borgerding and Dr. Stieve have denied Plaintiff's requests to obtain corrective elbow surgery or "effective pain medication." (Dkt. #13 at ¶ 84). Dr. Stieve discontinued Plaintiff's Baclofen prescription in 2009 and in 2012 denied Plaintiff's request to again obtain Baclofen. (Dkt. #13 at ¶ 85). Plaintiff asserts that the doctors' actions violated his Eighth Amendment right to be free from cruel and unusual punishment. (Dkt. #13 at ¶¶ 84-86).

### H.   Count VIII

Plaintiff was, at an unspecified date, provided Vitamin D3. (Dkt. #13 at ¶ 87). Dr. Worel subsequently discontinued this prescription on the ground that "it is not necessary." (Dkt. #13 at ¶ 88). Plaintiff asserts that Dr. Worel's actions violated his Eighth Amendment right to be free from cruel and unusual punishment. (Dkt. #13 at ¶¶ 89-90).

Plaintiff initiated the present action against Corizon Health Services, Prison Health Services, and the following individuals: Kimberly Silvernail, Unknown Stieve, Unknown McKenna,

Unknown Borgerding, Unknown Worel, C. Burdette, M. Wilkenson, P. Lamb, Barbara Bien, and various Unknown Parties. Defendants now move for summary judgment.

## **LEGAL STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir.

2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains

evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.**     **Exhaustion**

Defendants move to dismiss Plaintiff's claims on the ground that Plaintiff has failed to properly exhaust his administrative remedies. Defendants Silvernail, Stieve, McKenna, Borgerding, Burdette, Wilkinson, and Lamb first moved for relief on exhaustion grounds, (dkt. #32), after which Defendants Bien, Worel, Corizon Health Inc., and Prison Health Services likewise moved for relief on this basis, (dkt. #39). For the reasons discussed below, the Court concludes that Plaintiff's claims must be dismissed for failure to exhaust administrative remedies, save Plaintiff's claim that Defendants Borgerding and Stieve, by refusing to approve or perform surgery on his left upper extremity, violated his Eighth Amendment rights.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of

establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

Michigan Department of Corrections Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P. If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance. *Id.* The grievance policy provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R. The prisoner must submit the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was

received, within ten business days after the response was due. *Id.* at ¶ BB. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ FF. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

In support of their motion, Defendants have submitted evidence concerning numerous grievances which Plaintiff has filed. An examination of these various grievances reveals the following.

A.   MCF-14-07-0617-12f and MCF-14-07-0619-12i

Plaintiff initiated these grievances on June 29, 2014. (Dkt. #50 at Page ID# 485-96). Plaintiff pursued both grievances through all three steps of the prison grievance process. The step three denials of both of these grievances were mailed to Plaintiff on October 24, 2014. Because Plaintiff initiated the present action before allowing the prison grievance process to be completed, these particular grievances cannot serve to exhaust any of Plaintiff's claims.

Where an inmate files a civil action in federal court before completing the available administrative processes, his complaint (or certain claims therein) must be dismissed for failure to properly exhaust administrative remedies. *See, e.g., Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed"); *Larkins v. Wilkinson*, 1998 WL 898870 at *2 (6th Cir., Dec. 17, 1998) (inmate's "attempt to exhaust his available administrative remedies only after filing suit in federal court ignores the clear mandate of § 1997e(a)"); *Hopkins v. Ohio Department of Corrections*, 84 Fed. Appx. 526, 527 (6th Cir., Dec. 4, 2003) ("[w]hen a prisoner fails to exhaust his administrative

remedies before filing a civil rights complaint in federal court, or only partially exhausts administrative remedies, dismissal of the complaint is appropriate" because "[e]xhaustion may not be completed after a federal complaint has been filed"); *Zimmerman v. Hardiman*, 2014 WL 806388 at *1 (W.D. Mich., Feb. 28, 2014) (same).

According to MDOC policy, "[t]he total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II." Mich. Dep't. of Corr., Policy Directive 03.02.130 ¶ S (effective July 9, 2007). MDOC policy further provides that if prison officials fail to timely respond to a grievance, the inmate may proceed to the next step in the grievance process. *See* Mich. Dep't. of Corr., Policy Directive 03.02.130 ¶ T.

In circumstances in which a prisoner initiates legal action prior to receiving a response to his Step III grievance, but after the expiration of the aforementioned 120 day period, the Court has determined that such constitutes proper exhaustion of available administrative remedies. As the Court has observed, to conclude otherwise would permit MDOC officials to easily obtain the dismissal of *every* lawsuit filed by a prisoner who properly complies with the MDOC's grievance policies. MDOC officials would need only ignore every Step III grievance until after the expiration of the 120 day period and simply wait until the prisoner files a lawsuit. Once the prisoner files a lawsuit, MDOC officials could then issue a response to the Step III grievance and claim that the lawsuit must be dismissed because it was filed before the inmate completed the administrative process. The present circumstance, however, is distinguishable.

Plaintiff initiated these grievances on June 29, 2014. Thus, the administrative grievance process was not properly completed until the sooner of the following: (1) Plaintiff receiving a response

to his Step III grievance, or (2) the expiration, on October 27, 2014, of the 120-day grievance response period. When Plaintiff initiated the present lawsuit on October 15, 2014, however, he had neither received a response to his Step III grievance nor had the 120-day period expired. Simply stated, when Plaintiff initiated the present action, the MDOC grievance process had not been completed.

B. MCF-13-04-693-28e

Plaintiff initiated this grievance on April 25, 2013. (Dkt. #33 at Page ID#130-34). Plaintiff alleged that on February 20, 2013, Defendant Stieve refused to approve a medication prescription issued by another doctor. (Dkt. #33 at Page ID#133). Plaintiff's Step 3 grievance was rejected as untimely. (Dkt. #33 at Page ID#130). Moreover, this particular grievance does not correspond with any of the claims in Plaintiff's amended complaint. Accordingly, this grievance cannot serve to exhaust any of the claims in Plaintiff's amended complaint.

C. MCF-13-04-696-12i

Plaintiff initiated this grievance on April 25, 2013, requesting this his "ground floor housing special accommodation" be "reinstated." (Dkt. #33 at Page ID#135-39). Plaintiff's Step 3 grievance was rejected as untimely. (Dkt. #33 at Page ID#135). Accordingly, this grievance cannot serve to exhaust any of the claims in Plaintiff's amended complaint.

D. MCF-13-04-695-12i

Plaintiff initiated this grievance on April 25, 2013, requesting this his "cotton blanket special accommodation" be "reinstated." (Dkt. #33 at Page ID#140-45). Plaintiff's Step 3 grievance

was rejected as untimely. (Dkt. #33 at Page ID#140). Accordingly, this grievance cannot serve to exhaust any of the claims in Plaintiff's amended complaint.

      E.     MCF-13-04-697-28e

Plaintiff initiated this grievance on April 25, 2013, requesting that he be permitted to participate in an MRI procedure "to verify his herniated disc [at] L4-L5." (Dkt. #33 at Page ID#146-50). Plaintiff's Step 3 grievance was rejected as untimely. (Dkt. #33 at Page ID#146). Accordingly, this grievance cannot serve to exhaust any of the claims in Plaintiff's amended complaint.

      F.     MCF-14-04-338-12z1

Plaintiff initiated this grievance on April 6, 2014, alleging that he was not receiving adequate medical treatment for a bone spur in his left upper extremity. (Dkt. #33 at Page ID#151-55). Specifically, Plaintiff asserted that he required surgery to remove the bone spur. (Dkt. #33 at Page ID#151-54). Plaintiff pursued this grievance through all three steps of the prison grievance process. The allegations in this grievance correlate to the allegations in Count VII of Plaintiff's amended complaint that Defendants Borgerding and Stieve denied Plaintiff's requests to undergo surgery to repair the bone spur in his left upper extremity.

The Court recognizes that Plaintiff does not identify Defendants Borgerding or Stieve by name in this grievance. In fact, Plaintiff did not identify anybody by name in this particular grievance. While prison officials may have been justified in rejecting this grievance for failure to identify by name anybody against whom the grievance was asserted, they instead addressed Plaintiff's grievance on the merits at all three steps of the grievance process. Under such circumstances, Defendants cannot now rely

on Plaintiff's failure to identify in his grievance the individuals against whom the grievance was asserted. *See, e.g., Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010) (where prison officials declined to enforce a grievance-related procedural requirement, such as the requirement to identify by name the individuals against whom a grievance is asserted, defendant cannot rely on the prisoner's failure to comply with the procedure in question to obtain dismissal on exhaustion grounds); *Murray v. Guernsey*, 2012 WL 2417651 at *1 (W.D. Mich., June 26, 2012) (same). Accordingly, the Court finds that this grievance properly exhausts Plaintiff's claim that Defendants Borgerding and Stieve, by refusing to approve or perform surgery on his left upper extremity prior to April 6, 2014, violated Plaintiff's Eighth Amendment rights.

### G.     MCF-13-12-1641-02c

Plaintiff initiated this grievance on December 19, 2013, alleging that he was not being paid at the proper rate for his prison job. (Dkt. #33 at Page ID#156-61). This grievance does not concern any of the claims asserted in Plaintiff's amended complaint. Accordingly, this grievance cannot serve to exhaust any of the claims in Plaintiff's amended complaint.

### H.     MCF-13-10-1444-20e

Plaintiff initiated this grievance on October 4, 2013, asserting claims regarding the religious diet options offered by the prison. (Dkt. #33 at Page ID#162-66). This grievance does not concern any of the claims asserted in Plaintiff's amended complaint. Accordingly, this grievance cannot serve to exhaust any of the claims in Plaintiff's amended complaint.

      I.      MCF-13-04-694-12i

Plaintiff initiated this grievance on April 25, 2013, asserting that he requires a "bottom bunk special accommodation." (Dkt. #33 at Page ID#167-71). Plaintiff's Step 3 grievance was rejected as untimely. (Dkt. #33 at Page ID#167). Accordingly, this grievance cannot serve to exhaust any of the claims in Plaintiff's amended complaint.

      J.      DRF-12-09-2065-12f and DRF-13-01-0127-28a and DRF-12-09-2075-28a

On September 5, 2012, Plaintiff initiated grievance DRF-12-09-2065-12f. (Dkt. #33 at Page ID#176-81). This grievance does not concern any discrete event(s) and was not asserted against any particular individual. Instead, this grievance merely articulates Plaintiff's general dissatisfaction with the particular pain medications he was being prescribed. The allegations in this grievance, however, do not correlate with any particular claim asserted in Plaintiff's amended complaint. Grievances DRF-13-01-0127-28a and DRF-12-09-2075-28a were both rejected as duplicative of grievance DRF-12-09-2065-12f. (Dkt. #33 at Page ID#172-75, 197-200). Accordingly, none of these grievances serve to exhaust any of the claims in Plaintiff's amended complaint.

      K.      DRF-12-09-2064-01b

Plaintiff initiated this grievance on September 5, 2012, challenging amounts removed from his prisoner trust account for victim restitution. (Dkt. #33 at Page ID#182-86). This grievance does not concern any of the claims asserted in Plaintiff's amended complaint. Accordingly, this grievance cannot serve to exhaust any of the claims in Plaintiff's amended complaint.

      L.     DRF-12-10-2248-28e

Plaintiff initiated this grievance on September 26, 2012, alleging that he was not being provided appropriate pain medication. (Dkt. #33 at Page ID#187-91). This grievance was rejected as untimely. (Dkt. #33 at Page ID#187, 189). Accordingly, this grievance cannot serve to exhaust any of the claims in Plaintiff's amended complaint.

      M.     DRF-12-08-1894-02c

Plaintiff initiated this grievance on August 16, 2012, alleging that he was not being paid at the proper rate for his prison job. (Dkt. #33 at Page ID#1192-96). This grievance does not concern any of the claims asserted in Plaintiff's amended complaint. Accordingly, this grievance cannot serve to exhaust any of the claims in Plaintiff's amended complaint.

      N.     DRF-12-08-1806-28a

Plaintiff initiated this grievance on August 4, 2012, alleging that he was improperly charged a five dollar co-pay following a July 27, 2012 visit to healthcare. (Dkt. #33 at Page ID#201-05). This grievance does not concern any of the claims asserted in Plaintiff's amended complaint.[3] Accordingly, this grievance cannot serve to exhaust any of the claims in Plaintiff's amended complaint.

In sum, the evidence submitted by Defendants establishes that Plaintiff has failed to exhaust the claims asserted in his amended complaint, save the aforementioned claim against Defendants Borgerding and Stieve. Plaintiff has failed to present evidence to the contrary. Accordingly, the Court

---

[3] In Count I of his amended complaint, Plaintiff asserts a claim that he was improperly charged a five-dollar co-pay following a visit to health care, but that allegation concerns a completely different date.

finds that Defendants have satisfied their burden to obtain dismissal, on exhaustion grounds, of all the claims in Plaintiff's amended complaint, save the claim that Defendants Borgerding and Stieve, by refusing to approve or perform surgery on Plaintiff's left upper extremity prior to April 6, 2014, violated Plaintiff's Eighth Amendment rights.

**II.         Unserved Defendants**

Federal Rule of Civil Procedure 4(c) indicates that "[a] summons must be served with a copy of the complaint." The time frame within which service must be effected is articulated in Rule 4(m), which provides that if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, "the court - on motion or on its own initiative after notice to the plaintiff - must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *See also, Abel v. Harp*, 122 Fed. Appx. 248, 250 (6th Cir., Feb. 16, 2005) ("[a]bsent a showing of good cause to justify a failure to effect timely service, the Federal Rules of Civil Procedure *compel* dismissal") (emphasis added); *Clemons v. Soeltner*, 652 Fed. Appx. 81, 82 (6th Cir., Mar. 26, 2003) (if the plaintiff demonstrates good cause for such failure, the court *may* extend the time for service).

Plaintiff initiated the present action on October 15, 2014, and amended his complaint on December 15, 2014. In the time since Plaintiff amended his complaint, he has failed to identify the John Does named as defendants in this matter, seek the assistance of the Court in identifying these individuals, or request an extension of time to effect service on these individuals. Considering Plaintiff's lack of diligence in this matter, as well as his failure to articulate good cause for such lack of diligence, the

undersigned recommends that Plaintiff's claims against the unidentified John Doe defendants be dismissed without prejudice for failure to timely effect service.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (Dkt. #32), be **granted in part and denied in part**. Specifically, the undersigned recommends that Plaintiff's claims against Defendants Silvernail, Stieve, McKenna, Borgerding, Burdette, Wilkinson, and Lamb be dismissed for failure to exhaust administrative remedies save for Plaintiff's claim that Defendants Borgerding and Stieve, by refusing to approve or perform surgery on his left upper extremity prior to April 6, 2014, violated his Eighth Amendment rights.

The undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (Dkt. #39), be **granted** and Plaintiff's claims against Defendants Bien, Worel, Corizon Health Inc., and Prison Health Services be dismissed for failure to exhaust administrative remedies. The undersigned also recommends that Plaintiff's claims against the unidentified John Doe defendants be **dismissed without prejudice** for failure to timely effect service. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

```
```

objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                Respectfully submitted,

Date:  August 17, 2015                /s/ Ellen S. Carmody
                                            ELLEN S. CARMODY
                                            United States Magistrate Judge