UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT PANN,

               Plaintiff,                              Hon. Janet T. Neff

v.                                           Case No. 1:14-cv-1074

CORIZON HEALTH SERVICES, et al.,

               Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants' Motion for Summary Judgment,</u> (ECF No. 92), and <u>Defendants' Motion for Summary Judgment,</u> (ECF No. 95).  Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motions be **granted**, Plaintiff's claims against the unserved defendants be **dismissed**, and this action **terminated**.

## BACKGROUND

Plaintiff initiated this action on October 15, 2014, against Corizon Health Services, Prison Health Services, nine identified individuals, and several yet unidentified individuals.  (ECF No. 1).  Plaintiff subsequently amended his complaint.  (ECF No. 13).  Plaintiff's amended complaint is divided into eight separate counts each of which allege violations of his Eighth Amendment rights.  The specific allegations in Plaintiff's complaint are discussed below.  All of the defendants against whom service has been effected now move for summary judgment.

## LEGAL STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility considerations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In

sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, the plaintiff on a claim for relief or the defendant on an affirmative defense, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

## I.       Individual Defendants

Plaintiff alleges that Defendants failed to provide him appropriate medical treatment in violation of his Eighth Amendment rights. The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment

protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847).

To the extent, however, that Plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, Defendant is entitled to summary judgment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*,

2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

A.     Count I

The following allegations are contained in Plaintiff's amended complaint.  On May 20, 2012, Plaintiff suffered a fracture of his right hand.  (ECF No. 13 at PageID.63).  On June 4, 2012, Plaintiff underwent surgery to repair this injury.  (ECF No. 13 at PageID.63).  Following surgery, Plaintiff was prescribed Ultram.[1]  (ECF No. 13 at PageID.64).  On June 19, 2012, Plaintiff's Ultram prescription "ran out" at which point Plaintiff requested a refill.  (ECF No. 13 at PageID.64).  In response, Nurse Kimberly Silvernail informed Plaintiff that Dr. Holmes instructed that Plaintiff "was to take over the counter medication." (ECF No. 13 at PageID.64-65).  The following day, Plaintiff again requested a refill of his Ultram prescription.  (ECF No. 13 at PageID.65).  Nurse Silvernail responded by stating to Plaintiff, "you're trying to work the system and you will never get Ultrams again." (ECF No. 13 at PageID.65).  Despite refusing Plaintiff's request for pain medication, Silvernail charged Plaintiff the five dollar health care co-pay fee.  (ECF No. 13 at PageID.65).  On June 21, 2012, Plaintiff met with Dr. Holmes who provided Plaintiff with a two week supply of Ultram.  (ECF No. 13 at PageID.65).

---

[1]  Ultram is a "narcotic-like pain reliever" used to treat moderate to severe pain.  *See* Ultram, available at http://www.drugs.com/ultram.html (last visited on December 19, 2016).

Plaintiff alleges that Nurse Silvernail denied him medication in violation of his Eighth Amendment right to be free from cruel and unusual punishment. (ECF No. 13 at PageID.65). Plaintiff also alleges that Silvernail improperly charged him the five dollar co-pay following his June 20, 2012 examination. (ECF No. 13 at PageID.65-66). Plaintiff further alleges that Health Unit Manager (HUM) McKenna "is vicariously liable under respondeat superior theory by her workers' actions, she is responsible for ensuring patients receive prescribed treatment, which Plaintiff was obviously denied by pharmacy and RN Silvernail." (ECF No. 13 at PageID.66).

Defendant Silvernail has submitted an affidavit in which she asserts the following. Plaintiff returned to prison on June 4, 2012, following his hand surgery. (ECF No. 96-2 at PageID.897-98). Silvernail is not licensed to prescribe medication so she "promptly" spoke with Dr. Holmes who "within 30 minutes" authored a prescription for Plaintiff to receive pain medication. (ECF No. 96-2 at PageID.897-98). Shortly thereafter, Defendant Silvernail's work shift ended and she exited the facility. (ECF No. 96-2 at PageID.897-98). When Plaintiff's prescription subsequently expired, Silvernail requested that Plaintiff's medical providers renew his prescription which they did. (ECF No. 96-2 at PageID.897-98). The medical records attached to Defendant Silvernail's affidavit confirm that Plaintiff was provided pain medication following his June 4, 2012 hand surgery. (ECF No. 96-2 at PageID.902-04).

Plaintiff has responded by submitting copies of treatment notes which reveal the following. Plaintiff received pain medication on June 4, 2012, upon returning to the prison following his surgery. (ECF No. 121-2 at PageID.1191). On June 20, 2012, Plaintiff met with Defendant Silvernail and requested additional pain medication. (ECF No. 121-2 at PageID.1193). Defendant Silvernail explained to Plaintiff that long-term reliance on pain medication was not recommended. (ECF

No. 121-2 at PageID.1193). Defendant Silvernail instead instructed Plaintiff to use ice and over-the-counter medication, but also informed him that "if it doesn't work kite H[ealth]C[are] for further evaluation." (ECF No. 121-2 at PageID.1193). The following day, Plaintiff again requested a renewal of his pain medication. (ECF No. 121-2 at PageID.1194). Defendant Silvernail again informed Plaintiff that "it is not common practice to be put on heavy pain medication long term." (ECF No. 121-2 at PageID.1196). Defendant Silvernail nevertheless agreed to bring the matter to the attention of a physician for review. (ECF No. 121-2 at PageID.1194). The following day, Plaintiff's pain medication prescription was renewed by Dr. Holmes. (ECF No. 96-2 at PageID.904).

The evidence before the Court reveals that Defendant Silvernail is entitled to relief. With respect to Plaintiff's allegation that his initial pain medication prescription was delayed, Plaintiff has presented no evidence that such was the result of any action undertaken by Defendant Silvernail. As for Plaintiff's allegation that Defendant Silvernail improperly denied his subsequent request to renew his prescription, the evidence reveals nothing more than a disagreement between Plaintiff and Defendant Silvernail regarding how to best treat his symptoms. However, Plaintiff's disagreement with Defendant's professional judgment simply fails to implicate the Eighth Amendment.

Defendant Silvernail is likewise entitled to summary judgment on Plaintiff's claim that Defendant improperly charged him the required five-dollar co-pay following the visit(s) in which Defendant denied Plaintiff's request to have his pain medication prescription renewed. To the extent Plaintiff argues that the assessment of a co-pay is unconstitutional, the Court disagrees. *See, e.g., Miracle v. Smith*, 2016 WL 5867825 at *4 (W.D. Ky., Oct. 6, 2016) (it does not violate the Constitution to charge prisoners a co-pay when meeting with health professionals). Moreover, to the extent that Plaintiff merely asserts that he was mistakenly charged the co-pay in question, Plaintiff is required to

first plead and prove that there does not exist any adequate post-deprivation state remedy for such an alleged billing error. *See, e.g., Ketzner v. Douglas*, 2009 WL 173922 at *9 (E.D. Mich., Jan. 26, 2009). Plaintiff has failed to assert or demonstrate the absence of an adequate remedy for any alleged discrepancies in the billing of the required co-pay.

Finally, Defendant McKenna is entitled to relief on Plaintiff's claim that she is vicariously liable for the alleged failure by her employees to provide Plaintiff with appropriate medical treatment. Liability in a § 1983 action cannot be based upon a theory of respondeat superior or vicarious liability. *See Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206-07 (6th Cir. 1998). Plaintiff "must show that a supervising officer did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on." *Walters v. Stafford*, 317 Fed. Appx. 479, 486 (6th Cir., Mar. 18, 2009) (citing *Bass*, 167 F.3d at 1048). Likewise, liability does not attach to a supervisory employee "based solely on the right to control employees, or simple awareness of employees' misconduct." *Stafford*, 317 Fed. Appx. at 486-87. Instead, Plaintiff must demonstrate *personal involvement* by a particular defendant. *See Bass*, 167 F.3d at 1048 (liability is not to be found in passive behavior or an alleged failure to act, rather liability must be based upon "active unconstitutional behavior"). Plaintiff has neither alleged nor demonstrated that Defendant McKenna personally engaged in any unconstitutional behavior. Accordingly, the undersigned recommends that Defendant McKenna is entitled to summary judgment as to this claim.

B.      Count II

The following allegations are contained in Plaintiff's amended complaint.  In October 2012, Dr. Holmes prescribed Baclofen[2] for Plaintiff.  (ECF No. 13 at PageID.66).  Dr. Stieve, a Corizon Health Care Medical Officer, denied this prescription.  (ECF No. 13 at PageID.66).  Plaintiff alleges that Dr. Stieve denied him medication in violation of his Eighth Amendment right to be free from cruel and unusual punishment.  (ECF No. 13 at PageID.66-67).

Defendant Stieve has submitted an affidavit in which he asserts that Baclofen is "a potent anti-spasmotic" medication "reserved for inmates with severe spasticity (such as cerebral palsy) or a significant spinal cord injury." (ECF No. 96-3 at PageID.909).  Defendant Stieve, in the exercise of his medical and professional judgment, determined that Plaintiff's condition did not require or warrant the prescription of such a medication.  (ECF No. 96-3 at PageID.909).  In sum, Plaintiff simply disagrees with Defendant's treatment decisions made in the exercise of his medical and professional judgment.  While such disagreement may constitute negligence or malpractice, such does not implicate the Eighth Amendment.  Accordingly, the undersigned recommends that Defendant Stieve is entitled to summary judgment as to this claim.

---

[2]  Baclofen is used to relieve muscle "spasms, cramping, and tightness."  *See* Baclofen, available at http://www.mayoclinic.org/drugs-supplements/baclofen-oral-route/description/drg-20067995 (last visited on August 11, 2015).

C.      Count III

The following allegations are contained in Plaintiff's amended complaint.  Plaintiff injured his back in 1980, suffering two herniated discs.  (ECF No. 13 at PageID.67).  Plaintiff "has signed several medical releases for [prison] health care to confirm this pre-existing injury, diagnosed by myelogram."  (ECF No. 13 at PageID.67).  When taking Ultram, Plaintiff "was able to function almost pain free for the first time in years," but "has not slept a full night since his Ultram prescription expired."  (ECF No. 13 at PageID.67).  Dr. Holmes informed Plaintiff that "if he were able to prove his spinal injury, Ultram medication would be available for use as needed."  (ECF No. 13 at PageID.67).  Plaintiff's attempts to obtain his medical records from Harper Grace Hospital in Detroit, where his myelogram was performed, have been unsuccessful.  (ECF No. 13 at PageID.68).  Dr. Worel and Physician's Assistant Bien have refused Plaintiff's request to perform the testing necessary "to confirm Plaintiff's herniated disc."  (ECF No. 13 at PageID.68).  Plaintiff alleges that the refusal by Worel and Bien to perform the requested testing constitutes deliberate indifference to his serious medical needs.  (ECF No. 13 at PageID.68).

In support of her motion for summary judgment, Defendant Bien has submitted an affidavit in which she asserts:

> There is no indication that an MRI would be helpful in diagnosing Plaintiff's condition.  In my experience, an MRI or CAT Scan is only medically indicated when there is significant documentation showing muscle wasting or neurological and degenerative findings that demonstrate that there could be a problem that an MRI would uncover.  Plaintiff had no such symptoms.

(ECF No. 92-3 at PageID.727).

In support of his motion for summary judgment, Defendant Worel has submitted an affidavit in which he asserts:

I am aware that Plaintiff seeks an MRI for his back.  Based on my physical examination and review of x-ray, an MRI is not medically indicated.  Typically, an MRI or CAT Scan is only medically indicated when there is significant documentation showing muscle wasting or neurological and degenerative findings that demonstrate that there could be a problem that an MRI would uncover.  Based on these criteria, nothing in Plaintiff's condition indicated that an MRI would be useful.

(ECF No. 92-1 at PageID.719).

Plaintiff has presented nothing, other than his own lay opinion, to refute Defendants' affidavits.  Moreover, the medical evidence submitted by Defendants supports their opinion that Plaintiff's condition did not warrant an MRI examination.  (ECF No. 94-1 at PageID.753, 760, 795-97, 862).  Plaintiff has presented no evidence, medical or otherwise, suggesting otherwise.  In sum, Plaintiff simply disagrees with Defendants' treatment decisions made in the exercise of their professional judgment.  While such disagreement may constitute negligence or malpractice, such does not implicate the Eighth Amendment.  Accordingly, the undersigned recommends that Defendants Worel and Bien be granted summary judgment as to the claims in Count III of Plaintiff's amended complaint.

D.      Count IV

The following allegations are contained in Plaintiff's amended complaint.  Plaintiff is allergic to wool.  (ECF No. 13 at PageID.68).  Dr. Worel denied Plaintiff's request for a cotton blanket accommodation, stating "there is no such thing as a wool allergy."  (ECF No. 13 at PageID.68).  Plaintiff then asked Physician's Assistant Bien for a cotton blanket accommodation.  (ECF No. 13 at PageID.68).  Bien denied the request, stating that he "would have to see the rash."  (ECF No. 13 at PageID.68).  Plaintiff asserts that his medical records document that he has experienced "severe rashes and itching due to contact with wool."  (ECF No. 13 at PageID.68).  Plaintiff alleges that by denying his requests

for a cotton blanket accommodation, Dr. Worel and Physician's Assistant Bien have violated his Eighth

Amendment right to be free from cruel and unusual punishment.  (ECF No. 13 at PageID.72).

> In an affidavit, Defendant Worel asserts:
>
> I am aware that Plaintiff complained of being denied a cotton blanket. The standard issue blankets in prison are wool.  MDOC policy states that cotton blankets should only be issue[d] in cases where the inmate has "severe persistent uticaria on aggressive treatment" or "severe generalized dermatitis inadequately controlled on aggressive treatment." Plaintiff did not have either of these conditions.

(ECF No. 92-1 at PageID.723-24).

> In an affidavit Defendant Bien asserts:
>
> With regard to the cotton blanket request, Plaintiff simply does not meet the criteria.  There is no evidence to support Plaintiff's claims that he is suffering from having to use a wool blanket.

(ECF No. 92-3 at PageID.727).

A review of the medical evidence fails to reveal that Plaintiff suffers from a wool allergy

or other condition making denial of a cotton blanket cruel and unusual punishment.  (ECF No. 94-1 at

PageID.751-874; ECF No. 121 at PageID.1191-1370; ECF No. 126-2 at PageID.1429-31).  The Court

recognizes that Plaintiff had previously been afforded a cotton blanket accommodation.  (ECF No. 121-

13 at PageID.1353-57).  The Orders implementing this accommodation, however, do not indicate

whether such was medically necessary or merely a courtesy extended to Plaintiff.  (ECF No. 121-13 at

PageID.1353-57).  Again, the evidence reveals merely that Plaintiff disagrees with the treatment

decisions made by Defendants in the exercise of their professional judgment.  Such disagreement does

not implicate the Eighth Amendment.  Accordingly, the undersigned recommends that Defendants

Worel and Bien be granted summary judgment as to the claims in Count IV of Plaintiff's amended

complaint.

E.      Count V

The following allegations are contained in Plaintiff's amended complaint.  Plaintiff was issued the following special accommodations due to his various physical ailments: (1) ground floor housing, and (2) bottom bunk.  (ECF No. 13 at PageID.68).  At an unspecified date, these two accommodations were rescinded.  (ECF No. 13 at PageID.68-69).  Plaintiff asked Dr. Worel and Physician's Assistant Bien to renew these particular accommodations, but both refused.  (ECF No. 13 at PageID.69).  Plaintiff alleges that their actions violated his Eighth Amendment right to be free from cruel and unusual punishment.  (ECF No. 13 at PageID.72).

In an affidavit, Defendant Worel asserts:

I am aware that Plaintiff complains that he was improperly deprived of bottom bunk and ground floor accommodations.  These accommodations were not medically indicated when Plaintiff requested them.  The MDOC guidelines indicate that permanent bottom bunk accommodations should be granted only for a limited number of reasons, including seizure disorder, morbid obesity, and significantly impaired balance or mobility.  None of these reasons applied to Plaintiff.  Again, Plaintiff seemed to move around fine at his appointments.  He showed no weakness to indicate that he needed special accommodations.  On September 23, 2014, Plaintiff claims that he hurt his leg coming off the top bunk.  Since he claimed that his leg hurt, P.A. Bien gave him a bottom bunk detail for a limited time until his leg healed.

(ECF No. 92-1 at PageID.723).

In an affidavit, Defendant Bien asserts:

I have observed Plaintiff moving around when he comes to the clinic.  I have also reviewed his chart and the results of his tests.  There is no indication that he needs a ground floor accommodation or a bottom bunk accommodation.  He moves around without significant problem.

(ECF No. 92-3 at PageID.727).

A review of the medical evidence fails to reveal that Plaintiff suffers from any impairment that renders the denial of the requested accommodations a violation of the Eighth Amendment. (ECF No. 94-1 at PageID.751-874; ECF No. 121 at PageID.1191-1370; ECF No. 126-2 at PageID.1429-31). The medical record indicates that Plaintiff was capable of playing baseball. (ECF No. 94-1 at PageID.760). The results of physical examinations were consistently unremarkable. (ECF No. 94-1 at PageID.753, 781-84, 796-98, 801-03, 807-09, 858-59, 863-64, 867-69). Moreover, the results of objective medical testing do not advance Plaintiff's position. (ECF No. 94-1 at PageID.795). The Court recognizes that Plaintiff had previously been afforded ground floor housing and bottom bunk accommodations. (ECF No. 121-13 at PageID.1353-57). The Orders implementing these accommodations, however, do not indicate whether such were medically necessary or merely a courtesy extended to Plaintiff. (ECF No. 121-13 at PageID.1353-57). To reiterate, the evidence reveals nothing more than Plaintiff's disagreement with the treatment decisions made by Defendants in the exercise of their professional judgment. Such disagreement does not implicate the Eighth Amendment. Accordingly, the undersigned recommends that Defendants Worel and Bien be granted summary judgment as to the claims in Count V of Plaintiff's amended complaint.

F.      Count VI

The following allegations are contained in Plaintiff's amended complaint. Plaintiff suffers from a "deformed right foot" and has, since 2002, received name brand athletic shoes with arch support. (ECF No. 13 at PageID.69). Starting in 2013, the MDOC began issuing generic athletic shoes without arch support. (ECF No. 13 at PageID.70). Doctors Borgerding and Worel discontinued Plaintiff's authorization to receive special footwear. (ECF No. 13 at PageID.70). When Plaintiff asked

Physician's Assistant Bien for special footwear, she denied his request stating "you can purchase your own shoes." (ECF No. 13 at PageID.70). As a result, Plaintiff's ability to exercise has "decreased dramatically" causing his weight, cholesterol, and blood pressure all to increase. (ECF No. 13 at PageID.70). Plaintiff alleges that Defendants' refusal to provide him with special footwear violated his Eighth Amendment right to be free from cruel and unusual punishment. (ECF No. 13 at PageID.70).

With respect to this claim, Defendant Worel asserts:

> I am also aware that Plaintiff seeks certain footwear. Plaintiff stated that he was dissatisfied with the standard issue footwear. He was given deep toe box oxford shoes on December 26, 2012. He tried the shoes on and accepted the fit. The deep toe box oxfords are a special accommodation. In August 2013, at Plaintiff's request, I contacted the Regional Medical Officer (Dr. Borgerding) to see if Plaintiff could get an athletic shoe accommodation. Dr. Borgerding, who is an MDOC employee and not a Corizon employee, deferred the request. On January 8, 2014, Plaintiff discussed his shoe issue with a medical provider. The provider found Plaintiff' shoes to be in good repair, and directed him to the MDOC inmate catalog, where Plaintiff could purchase shoes if he did not like the ones provided to him by the MDOC. I am aware that Plaintiff states that he is dissatisfied with those options as well. In my medical opinion, Plaintiff's minor foot condition can be appropriately handled by the shoe options at his disposal. Plaintiff's foot condition does not represent a serious medical condition. When examined, he had a strong and normal gait.

(ECF No. 92-1 at PageID.720).

Defendant Borgerding has submitted an affidavit in which he asserts the following. During the relevant time period Defendant Borgerding was employed by the MDOC as the Regional Medical Officer. (ECF No. 96-4 at PageID.913-14). In this capacity, Borgerding is responsible for "the care and treatment provided to prisoners in various Michigan prisons." (ECF No. 96-4 at PageID.914). Defendant Borgerding never personally examined Plaintiff, but instead denied Plaintiff's request for special footwear after reviewing Plaintiff's medical records and determining that such contained no

evidence that Plaintiff "was fatigued, weak, or unable to ambulate without difficulty." (ECF No. 96-4 at PageID.914-15).

A review of the medical evidence fails to reveal that Plaintiff suffers from an impairment such that denying him athletic shoes constitutes cruel and unusual punishment. (ECF No. 94-1 at PageID.751-874; ECF No. 121 at PageID.1191-1370; ECF No. 126-2 at PageID.1429-31). The Court recognizes that Plaintiff had previously been afforded an athletic shoe accommodation. (ECF No. 121-13 at PageID.1353-57). The Orders implementing this accommodation, however, do not indicate whether such was medically necessary or merely a courtesy extended to Plaintiff. (ECF No. 121-13 at PageID.1353-57). Yet again, the evidence reveals merely that Plaintiff disagrees with the treatment decisions made by Defendants in the exercise of their professional judgment. Such disagreement does not implicate the Eighth Amendment. Accordingly, the undersigned recommends that Defendants Bien, Worel, and Borgerding be granted summary judgment as to the claims in Count VI of Plaintiff's amended complaint.

G.    Count VII

The following allegations are contained in Plaintiff's amended complaint. Plaintiff injured his left elbow in 1996. (ECF No. 13 at PageID.70). Because this injury has "never healed properly," Plaintiff continues to experience pain and limitation of movement. (ECF No. 13 at PageID.70). Doctors Borgerding and Stieve have denied Plaintiff's requests to obtain corrective elbow surgery or "effective pain medication." (ECF No. 13 at PageID.71). Dr. Stieve discontinued Plaintiff's Baclofen prescription in 2009 and in 2012 denied Plaintiff's subsequent request to again obtain

Baclofen.  (ECF No. 13 at PageID.71).  Plaintiff asserts that the doctors' actions violated his Eighth

Amendment right to be free from cruel and unusual punishment.  (ECF No. 13 at PageID.71).

1.      Elbow Surgery

Defendants Stieve and Borgerding assert that during the relevant time period they were

employed by the MDOC as Chief Medical Officer and Assistant Chief Medical Officer, respectively.

(ECF No. 96-3 at PageID.907, 914).  As such, neither Defendant examined Plaintiff, rather their

involvement in Plaintiff's care was limited to reviewing the treatment notes and recommendations of

other medical professionals.  (ECF No. 96-3 at PageID.906-11, 913-16).  In this respect, Defendant

Worel asserts:

> I am aware that Plaintiff wants surgery for his elbow injury.  Plaintiff's
> records indicate that he fell on February 20, 2014 and injured his elbow.
> He was seen promptly for this injury.  He was given a sling and an ice
> bag.  He was told to restrict his activity and to send in a sick call if his
> symptoms got worse.  I ordered an x-ray of the elbow.  The x-ray showed
> mild arthritic changes.  There was no evidence of an acute displaced
> fracture.  The x-ray revealed bone fragments near the olecranon and of
> the distal posterior portion of the epicondyles.  It appears that there was
> an old healed trauma in the region.  I recommend surgery for injuries like
> this if the active and passive range of motion are dramatically limited or
> if a patient's activities of daily living are dramatically limited.  Plaintiff
> demonstrated neither of these.  There is no indication that surgery is
> necessary.

(ECF No. 92-1 at PageID.720-21).

Defendant Worel's statements are supported by the medical evidence.  (ECF No. 94-1

at PageID.751-874; ECF No. 121 at PageID.1191-1370; ECF No. 126-2 at PageID.1429-31).  Plaintiff

has neither presented nor identified evidence indicating that his claim is based on anything other than

his personal disagreement with Defendants' treatment decisions.  However, to repeat, the fact that

Plaintiff simply disagrees with the treatment decisions made by medical professionals such does not implicate the Eighth Amendment.  Accordingly, the undersigned recommends that Defendants Stieve and Borgerding be granted summary judgment as to this particular claim.

2.      Baclofen

As noted above, Defendant Stieve has submitted an affidavit in which he asserts that Baclofen is "a potent anti-spasmotic" medication "reserved for inmates with severe spasticity (such as cerebral palsy) or a significant spinal cord injury."  (ECF No. 96-3 at PageID.909).   Dr. Stieve determined that Plaintiff "did not fit into this category at all."  (ECF No. 96-3 at PageID.909).   Dr. Stieve, therefore, agreed with the recommendation of the Pain Management Committee to not prescribe Baclofen to Plaintiff.  (ECF No. 96-3 at PageID.909).  Plaintiff has neither presented nor identified evidence indicating that his claim is based on anything other than his personal disagreement with Defendant's treatment decisions.  Again, that Plaintiff disagrees with the treatment decisions made by medical professionals does not implicate the Eighth Amendment.  Accordingly, the undersigned recommends that Defendant Stieve be granted summary judgment as to this particular claim.

H.      Count VIII

The following allegations are contained in Plaintiff's amended complaint.  Plaintiff was, at an unspecified date, provided Vitamin D3.  (ECF No. 13 at PageID.71).  Dr. Worel subsequently discontinued this prescription on the ground that "it is not necessary."  (ECF No. 13 at PageID.71). Plaintiff asserts that Dr. Worel's actions violated his Eighth Amendment right to be free from cruel and unusual punishment.  (ECF No. 13 at PageID.71).

In his affidavit, Defendant Worel asserts:

> I am aware that Plaintiff claims he is being improperly denied Vitamin
> D3 for his joint pain.  Vitamin D3 is not formulary, so it must be
> requested from the Regional Medical Officer, who is an MDOC
> employee.  I made this request in February 2013.  It was denied by Dr.
> Borgerding, the RMO.  As discussed above, Plaintiff' pain management
> treatment was appropriate.  He was given a variety of pain medications
> for his complaints of back and arthritic pain.  Further, it is my
> understanding that Vitamin D3 is available in a multivitamin that can be
> purchased at the inmate store.

(ECF No. 92-1 at PageID.724).

A review of the medical evidence fails to reveal that Plaintiff suffers from an impairment that renders the denial of his request for Vitamin D3 a violation of his Eighth Amendment rights.  (ECF No. 94-1 at PageID.751-874; ECF No. 121 at PageID.1191-1370; ECF No. 126-2 at PageID.1429-31).  Instead, the evidence reveals that Plaintiff simply disagrees with the treatment decisions made by Defendant Worel and others in the exercise of their professional judgment.  Such disagreement does not implicate the Eighth Amendment.  Accordingly, the undersigned recommends that Defendant Worel be granted summary judgment as to the claims in Count VIII of Plaintiff's amended complaint.

## I.      Defendants Lamb, Burdette, and Wilkinson

The only allegations Plaintiff makes against Defendants Lamb, Burdette, and Wilkinson is that they denied a grievance he filed regarding his request to obtain a bottom bunk accommodation.  (ECF No. 13 at PageID.68-69).  Such allegations, however, fail to state a claim upon which relief may be granted.  *See, e.g., Skinner v. Govorchin*, 463 F.3d 518, 525-26 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim"); *Lee v. Michigan Parole Board*, 2004 WL 1532563 at *2 (6th Cir., June 23, 2004) ("[s]ection 1983 liability

may not be imposed simply because a defendant denied an administrative grievance or failed to act upon information contained in a grievance"); *Alder v. Correctional Medical Services*, 2003 WL 22025373 at *2 (6th Cir., Aug. 27, 2003) ("[t]he mere denial of a prisoner's grievance states no claim of constitutional dimension"). Accordingly, the undersigned recommends that Plaintiff's claims against Defendants Lamb, Burdette, and Wilkinson be dismissed for failure to state a claim.

## II. Defendants Corizon and Prison Health Services

Plaintiff identifies Corizon and Prison Health Services (PHS) as defendants in his amended complaint. However, these entities are not vicariously liable for the actions of their employees and, therefore, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)); *Street v. Corr. Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996); *Starcher v. Correctional Medical Systems, Inc.*, 7 Fed. Appx. 459, 465 (6th Cir., Mar. 26, 2001).

To impose liability against Corizon or PHS, Plaintiff must demonstrate that he suffered a violation of his federal rights "because of" a policy, practice, or custom by such entity. *See Thomas*, 398 F.3d at 429. To establish the existence of a policy, practice, or custom, Plaintiff must demonstrate the following: (1) the existence of a "clear and persistent pattern" of illegal activity; (2) that Corizon or PHS had notice or constructive notice of such; (3) that Corizon or PHS tacitly approved of the illegal activity, such that "their deliberate indifference in their failure to act can be said to amount to an official policy of inaction" and (4) that the policy, practice, or custom in question was the "moving force" or "direct causal link" in the constitutional deprivation. *Id.* at 429 (quoting *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996)).

Plaintiff's amended complaint contains no factual allegations that, even if accepted as true, would entitle him to prevail on a claim against Corizon or PHS.  Accordingly, the undersigned recommends that Plaintiff's claims against Corizon and Prison Health Services be dismissed for failure to state a claim on which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

## III.        Federal Rule of Civil Procedure 56(d)

Plaintiff, citing Federal Rule of Civil Procedure 56(d), argues that Defendants' motions for summary judgment should be "denied as premature" on the ground that he has been unable to obtain necessary discovery.  (ECF No. 107).

Rule 56(d) provides that if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the Court may defer resolution of the motion and/or permit the nonmovant to obtain discovery.  When evaluating a Rule 56(d) request, the Court considers the following factors: (1) when the party seeking discovery learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would result in a different outcome; (3) how long the discovery period lasted; (4) whether the party seeking discovery was dilatory in its discovery efforts; and (5) whether the non-moving party was responsive to discovery requests.  *See Bowers v. Ophthalmology Group LLP*, 648 Fed. Appx. 573, 580 (6th Cir., May 16, 2016).

Assessment of these factors weighs against Plaintiff's request.  The issues regarding which Plaintiff still seeks discovery have been known to all parties from the outset of this action and Plaintiff was afforded ample time to conduct discovery.  Defendants were responsive to Plaintiff's discovery requests and while Plaintiff has filed several motions to compel on the ground that

Defendants' responses were insufficient, all such motions have been denied as lacking merit.  (ECF No. 29-30, 54, 65-66, 68, 70, 75, 77, 79, 102).  Finally, Plaintiff has not identified any discovery that would result in a different recommendation in this matter.  Accordingly, the undersigned recommends that Plaintiff's request to delay resolution of Defendants' motions so that he can engage in discovery be denied.

## IV.        Unserved Defendants

Federal Rule of Civil Procedure 4(c) indicates that "[a] summons must be served with a copy of the complaint."  The time frame within which service must be effected is articulated in Rule 4(m), which provides that if service of the summons and complaint is not made upon a defendant within 90 days after the filing of the complaint, "the court - on motion or on its own initiative after notice to the plaintiff - must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  *See also*, *Abel v. Harp*, 122 Fed. Appx. 248, 250 (6th Cir., Feb. 16, 2005) ("[a]bsent a showing of good cause to justify a failure to effect timely service, the Federal Rules of Civil Procedure *compel* dismissal") (emphasis added); *Clemons v. Soeltner*, 652 Fed. Appx. 81, 82 (6th Cir., Mar. 26, 2003) (if the plaintiff demonstrates good cause for such failure, the court *may* extend the time for service).

Plaintiff initiated the present action on October 15, 2014, and amended his complaint on December 15, 2014.  In the time since Plaintiff amended his complaint, he has failed to identify the John Does named as defendants in this matter or request an extension of time to effect service on these individuals.  Considering Plaintiff's lack of diligence in this matter, as well as his failure to articulate

good cause for such lack of diligence, the undersigned recommends that Plaintiff's claims against the unidentified John Doe defendants be dismissed without prejudice for failure to timely effect service.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment, (ECF No. 92), be **granted**, and Defendants' Motion for Summary Judgment, (ECF No. 95), be **granted**.  The undersigned also recommends that Plaintiff's claims against the unidentified John Doe defendants be **dismissed without prejudice** for failure to timely effect service and this action **terminated**.  The undersigned further recommends that appeal of this matter would not be taken in good faith.  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date:  January 13, 2017                    /s/ Ellen S. Carmody
                                        ELLEN S. CARMODY
                                        United States Magistrate Judge